# EXHIBIT 6



Proskauer Rose LLP   1001 Pennsylvania Avenue, N.W.  Washington, DC 20004-2533

Colin R. Kass
T: 202-416-6890
E: ckass@proskauer.com

February 14, 2018

Michael Dell'Angelo
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

Re:   *The Broadway League v. Telsey & the Teamsters, et al.,*
1:17-cv-09515-GHW-KHP (S.D.N.Y.)

Dear Michael:

We write regarding defendants' objections and responses to the League's first set of document requests.  While we have begun the meet and confer process on some of the global issues such as timing of initial productions, custodians, and time period, we indicated during our call on February 12th that we would be sending a letter addressing your objections.  This is that letter.  Let us know when you are available to continue our meet and confer.  We are available Thursday at 3pm.  To make the meet and confer as productive as possible, we highlight a number of our concerns here.

### 1.   *Issues Common to All Defendants*

### A.   *Timing of Productions*

The League's RFPs requested that each defendants' "first production [occur] not later than 30 days after service of these Requests," with a "complete production not later than 60 days after service of these Requests."  Each defendant objected, claiming that it would not ***start*** production until 60 days after and would not finish production for 150 days.[1]  That production is too leisurely, given the discovery period set by the Court and the fact that the bulk of the documents requested should be readily-available and capable of immediate production.

In that regard, we note that we served the IBT and Joint Council 16 with subpoenas that largely mirrored the requests served upon the Local.  The IBT and JC 16 were able to serve objections within 3 weeks, make their initial production of over 11,000 pages within 28 days,

---

[1] Defendants' 150 day deadline is vague for a number of reasons, and suggests that it may take even longer for defendants to complete their production.  *First*, in one General Objection, defendants each say the "production will continue within time frames to be agreed upon by the parties," without providing a deadline, and in the next General Objection, defendants set forth the 150 day deadline.  We assume this was a drafting error, and you mean to propose producing all documents within 150 days, unless the parties agree on a different period.  *Second*, the 150 day deadline is contingent on an agreement on an ESI protocol, a Protective Order (or interim Confidentiality agreement), and resolution of various issues.  We do not agree that these contingencies are appropriate.  *Third*, it is not clear what the starting point of the 150 days is.  We assume, though you do not say so, that it is from the date of service of the requests.

and plan to make a second production within 35 days of service. We expect that the IBT and JC 16, therefore, should be substantially complete with their production within 45 days of service, if not sooner. There is no reason why the Local and other defendants cannot complete most, if not all, of their production – at least as to categories of documents that they agree to produce – within the same time frame.

Under the Rules, if you need additional time beyond what is specified in the League's RFPs, it is incumbent on you to identify which *categories* of documents require a longer production schedule. You have not done so. As such, on our next meet and confer, we would like to gain a better understanding of the specific dates by which you will produce the following:

- Active Emails of Currently-Agreed-Upon Custodians[2]

- Network Drives/ Shared Files/ Hard-Copy/ Text Messages of Agreed Upon Custodians

- Targeted Searches

- Talent Database Productions

- Other Database Productions

- Other Responsive Information

### B.      Reliance on General or Specific Objections

Defendants served almost 100 pages of objections each. In each case, defendants interposed a series of General and Specific Objections, often failing to explain how defendants were planning on relying on those objections to limit the scope of the request, or to withhold documents responsive to the requests as written. It should be noted that Instruction No. 6 requires you to "state with particularity whether and in what manner the objection is being relied upon as a basis for limiting the scope of response or the production of any documents," and to "expressly indicate" if "you are withholding responsive information pursuant to any general or specific objection." Your General Objection No. 3 objects to this instruction, suggesting that you do intend to rely on your general or specific objections without explaining how you are relying on them to withhold responsive information.

That approach does not comport with the Federal Rules. On our meet and confer, we would like to know if you intend to stick with that position.

Relatedly, it appears that certain objections appear designed to limit the scope of your document *collection*, as opposed to limiting the documents from this collection that you will

---

[2] As to active emails from the agreed-upon custodians – within the scope of your offer of production – we noted that we expected production in the next two weeks, or 45 days after service of the request. You have refused to provide any firm commitment, indicating that you could not do so until we have resolved all issues concerning the "scope" of your production as set forth in your numerous objections. As we explained, absent a firm commitment, we believe we are at impasse.

2

withhold from *production*.  We understand that the parties will need to have a specific discussion of search terms, custodians, databases, and relevant period, all of which may affect the scope of collection.  But we would expect that once the parties have agreed upon the scope of collection, defendants will not be relying on any general or specific objections to withhold responsive documents from the production that are found within the collected document universe, unless you expressly state how you are doing so.

Accordingly, on the meet and confer, we would like to understand which objections you are relying on to define the *scope of collection*, and which you are relying on to withhold responsive documents *from production* within the scope of collection.  Likewise, we would like confirmation that, within the scope of collection, defendants will produce any documents responsive to the requests as written, unless you *expressly* state that you will not produce any documents, you *expressly* state how you are interpreting a request, or you *expressly* state what documents you will produce.

### C.    Privileged Documents

Defendants seek to exclude from their obligation to log privileged documents any "documents prepared in anticipation of, or in connection with, this litigation."  In light of the fact that the conduct is continuing in nature, and defendants have argued that they have changed their conduct since the inception of the litigation (and, in fact, have done so before to try to erect various ruses to meet the legal challenges the League raised in anticipation of litigation), we cannot agree to that limitation.  Similarly, in response to various specific requests, defendants objected on the grounds that it either (i) "calls for a legal conclusion or legal argument, may be invasive of the work product privilege," or (ii) "seeks materials subject to the work product doctrine, common-interest privilege, attorney-client privilege, and/or any other applicable privilege or protection."  Such privileges, if validly asserted, may be a basis for withholding and logging the documents, but is not a basis for excluding them from the scope of the request.  Accordingly, we expect that you will log every responsive document that you withhold on the basis of privilege.  Please confirm on our meet and confer that you will do so.

### D.    Relevant Period

The League's RFPs requested documents "created, modified, sent, or received on or after January 1, 2013." The Defendants' objected and proposed instead to produce documents that were "created on or after January 1, 2016 through February 9, 2018."  We do not agree to that modification for a number of reasons.

**<u>End Date</u>**. As to the end date, since this is a continuing conspiracy and defendants have continuously made references to changes in their behavior since the filing of the suit, we need discovery as to current circumstances.  Nor have you provided any reason for withholding documents you have collected, or will collect, on the basis of end date.  Thus, as we indicated on

our February 13th meet and confer, defendants should produce all documents through the date of collection.[3]

_**Beginning Date**_.  Defendants seek to change the start date from January 1, 2013 to January 1, 2016, based on the allegation that the conspiracy began "as early as June 2016," the precise dates being unknown.  But you have _**not**_ stated when the first communication among the defendants about the issues referenced in the complaint began.  Indeed, we now know that the discussions had progressed to the point of having an industry-wide gathering to secure each cartel member's adherence to the scheme as early as March 2016.  Presumably, there were planning discussions months, if not years, in advance of that among the principal architects of the scheme.  Moreover, many of the document requests are not limited to the conspiratorial communications, but also focus on how defendant casting companies provide casting services. Given the fact that there are only a limited number of new shows developed each year, the period of discovery we proposed seems reasonable.  On the February 13th meet and confer, we proposed a middle ground of July 1, 2014 as a compromise between our respective proposals.  While you would not agree to that compromise on the phone, you said you would consider it.  We think it provides a reasonable and efficient compromise that would allow the parties to move forward.[4]

_**"Created" v. "Created, Modified, Sent, or Received."**_  The League's RFPs ask for documents "created, modified, sent, or received" during the relevant period.  Defendants seek to limit this to documents "created" during this period.  But defendants have offered no reason why documents that are "in effect" or used in the ordinary course of business during the relevant period should not be produced. On the meet and confer, we would like to understand the basis for this objection.

### E.   Search Terms

Defendants state that they intend to use "a set of search terms" to limit the search for responsive information.  We request that you provide us with a copy of your proposed search terms.

### F.   Deduplication and E-Mail Threading

Defendants indicate that they will use "de-duplication technology," and "e-mail threading" to reduce the scope of production.  The League does not object to excluding _identical documents_ from the production, as long as the metadata contains information about whose files each copy of the document was found in.  The League believes that, while e-mail threading may be appropriate for defendants to make responsiveness determinations, all versions of any responsive email string should be produced.  In many cases, lower portions of email strings omit important details, like the identity of recipients.  Moreover, the burden of producing all versions

---

[3] As to whether additional document collections are required to cover events that occur during the discovery, we would expect the defendants to comply with their objections under Rule 26(e).  But since that issue is not currently before us, we can table a discussion of appropriate supplementation until later.

[4] As noted on the call, we believe that January 1, 2013 is the appropriate date for discovery.  While we are willing to compromise, in the absence of a compromise, we reserve the right to seek discovery for the full discovery period we requested.

once responsiveness of the top-level email string has been determined is minimal, since it can be done through automated processes.

### G.  Network Drives, Central Files, Shared Drives

In your responses, you identify custodians that you intend to search for responsive documents.  You also indicate that you will search "any server file path or network drive that the Identified Custodian routinely accessed as part of his or her responsibilities and is reasonably likely to have responsive documents."  Please confirm that this search will include any central office files (including hard-copy documents) that are maintained by the company and that are reasonably likely to contain responsive information.

### H.  ESI

Defendants have objected to producing any ESI that "is not reasonably accessible."  But you have failed to identify any ESI that may contain responsive information that you claim is not "reasonably accessible."  On the meet and confer, please be prepared to make such an identification, or confirm that you are not seeking to either limit the scope of *collection* or the scope of *production* based on this objection.  To the extent you are relying on this objection to withhold any otherwise responsive documents found within the scope of your document collection, we disagree.

### I.  General Definitional Objections

#### i.  "You"/ "Your"

Defendants have limited the term "you" or "your" to the named corporate defendants, and have objected as construing those terms to include "present or former affiliates, officers, directors, or employees."  It is unclear to us whether you are relying on this objection to withhold from *production* documents found within the scope of your document collection, as opposed to relying on the objection to define the scope of the *collection* itself.  If the former, we do not agree.  As to the latter, we would expect this objection to be resolved once the parties have agreed on the scope of the collection.  If you have a different understanding, please let us know.

#### ii.  "Theatre production"

The League's RFPs appropriately define the term theatre production.  Defendants' attempt to redefine that term is not appropriate.  In particular, it excludes shows in development unless such shows involve "an existing contract to be produced on Broadway."  That definition would exclude all shows in early development, which is the area defendants have first focused their boycott.  Accordingly, we disagree, and would expect you to produce all documents that you believe, in good faith, fall within the definition set forth in our requests.

#### iii.  "Casting Services"

You have sought to limit the definition of casting services to "casting work performed for Commercial Broadway Theatre," as you have defined it, rather than "casting services for any

theatre production" as defined in the requests.  For the reasons your attempt to redefine "theatre production" is inappropriate, so is your attempt to redefine "casting services."

### iv.  *"Casting Staff" or "Staff"*

The League's RFPs define the term "casting staff" or "staff" to include each "natural person that is [a casting company's] owner, shareholder, equity interest holder, officer, director, partner, member, employee, intern, or agent."  Your definition seeks to limit the request to "individuals that perform casting work."  It is unclear what you mean by "casting work," or how (or if) you intend to use that term to limit the scope of your collection or production.  Of course, in many cases, the requests that use the term "casting staff" or "staff" are limited to the provision of casting services, and as such there is no reason to artificially limit the term casting staff or staff.  If there are specific requests that you believe are too broad because of the breadth of this definition, please identify them, and we can deal with it on a request-by-request basis.

### v.  *"Talent Databases"*

The League's definition of "talent database" includes "any source or collection of information concerning actors, talent, cast member candidates, or theatre productions used in connection with providing casting services," including "(i) computerized or electronically stored information, (ii) hard-copy documents, (iii) notes or summaries of actors or theatre productions, and (iv) other materials or information concerning particular actors, talent, cast member candidates, and theatre productions."

Defendants interposed a series of objections and attempt to limit the definition to "a collection of data organized for rapid search and retrieval that contains information concerning actors, talent, or cast member candidates."  Thus, at a minimum, your revised definition excludes subparts (ii) through (iv) of our definition.

In order to appropriately meet and confer on this issue, we would need to understand what types of talent databases – as we have defined it – each casting company defendant uses or maintains.  Once we have a better understanding of what systems, or practices, each defendant uses, we can discuss whether there needs to be a modification to our definition, or the requests that use that term.

### J.  *Offer to Meet and Confer or Conduct a Targeted Search and Produce Documents*

For a number of requests that seek documents sufficient to show or identify specific information, defendants offer to "meet and confer with Plaintiff regarding [the information requested]" *or* "conduct a reasonable Targeted Search for documents [responsive to the request] and will produce [specified information]."[5]  We are unsure what you mean by this response.  Please clarify.

---

[5] This formulation appears in response to Casting Company RFP Nos: 5, 6, 7; Teamster RFP No:  5.

### 2.   Issues Concerning the Casting Companies' Objections

### A.   Casting Company Custodians

For each of the seven casting companies, you propose limiting the custodian search to one, two, or – in one case – three employees.  We agree that each of the custodians you proposed are appropriate, but we believe that there may be additional custodians that need to be searched. As we explained, we need organization charts (if they exist) and/or personnel directories for each casting company.  You have refused to provide this information, which makes it difficult for us to have a meaningful discussion about which custodians are appropriate.

During our February 12th and 13th meet and confers, however, you did provide some non-documentary information about certain casting directors.  We understand that we will have a further discussion about the casting company custodians on our next meet and confer.  This is our understanding of the current state of play:

- *Telsey & Co*:  You proposed Bernard Telsey and Will Cantler as custodians.  We did not have a detailed discussion about Telsey & Co., given your time constraints.  We look forward to any information you can provide on our next meet and confer.

- *Rubin Casting*:  You proposed Tara Rubin as the sole custodian for Rubin Casting.  But at least five additional Rubin Casting employees have joined the casting cartel by signing union cards.  We asked you for additional information about the involvement of these and other Rubin Casting employees in the unionization effort, including Lindsay Levine, Laura Schutzel, Kaitlin Shaw, and Eric Woodall.[6]  In addition, we have seen evidence that Merri Sugarman was also involved.  We would expect that each of these five individuals be searched, especially since Rubin Casting was on the "Steering Committee."  On the call, you also mentioned that Rubin Casting employs Felicia Rudolph, Lila Stallone, and Xavier Rubiano.  You have not provided any information concerning what functions they perform for Rubin Casting, or whether they were involved in efforts to obtain union recognition or to otherwise negotiate collectively.  You represented that there is no office manager or administrative assistant, although we noted that it appears that Rubin Casting uses a trcasst@tararubincasting.com email address in addition to Ms. Rubin's own business email address.

- *Calleri Casting*:  You proposed James Calleri, Paul Davis, and Erica Jensen as custodians.  Based on our call, we understand that Calleri casting has no other employees.

---

[6] During our meet and confer, you took issue with various terms, such as "employee" to describe the employees of the defendant casting companies, and "alleged conspiracy" to describe the interactions by and among the defendants to act collectively or in coordinated fashion.  To avoid nomenclature disputes we will refer to "unionization efforts" to describe any or all efforts (i) to join the Teamsters, (ii) to work with the Teamsters with respect to theatre productions, (iii) to participate in the Fairness for Casting Campaign, (iv) to act in collective or coordinated fashion with other casting companies, or (v) to be involved, in any capacity, with that events described in paragraphs 42-69 of the Complaint.

- ***Caparelliotis Casting***:  You proposed David Caparelliotis as the sole custodian. We asked whether Caparelliotis Casting had any other employees or associates. You said he had one associate casting director, who does not work on theatre productions, but only on TV or film.  We also asked whether Lauren Port and Joseph Gary were employed by, or had any responsibilities with Caparelliotis Casting.

- ***Tolan Casting:***  You proposed Cindy Tolan as the sole custodian.  You represented that she does "little Broadway casting," and only has one part-time custodian.  You did not identify her name, or indicate whether she had signed a union card or was otherwise involved in any unionization efforts.  We ask that you provide us with this information so we can make a determination about whether her files should be searched.  We inquired also about Adam Caldwell, and on our February 13th meet and confer, you stated that he no longer worked for Tolan Casting, but now works for Telsey & Co.  Please let us know if Tolan Casting has access to Mr. Caldwell's files for the time period when he worked there.  We also asked about Anne Davison and Nick Petrovich.

- ***Carnahan Casting:***  You proposed Jim Carnahan as the sole custodian.  We did not have a detailed discussion about Carnahan Casting, given your time constraints.  We look forward to any information you can provide on our next meet and confer.

- ***S/W Casting***:  You proposed Duncan Stewart and Benton Whitely as custodians. We did not have a detailed discussion about S/W Casting, given your time constraints.  We look forward to any information you can provide on our next meet and confer.

You have not provided us with sufficient information to show that these are the only individuals who are likely to have responsive information or who were involved in the events described in the complaint.  It also appears that the casting staff of many of the casting company defendants, beyond those you have proposed as custodians, have joined the cartel by signing union cards.  At a minimum, we would expect that your custodian list would include each individual that signed a union card.  We would also like to understand the roles and responsibilities of each casting staff member before making a final determination as to the custodian list.  As such, please produce organization charts and personal directories immediately.

### B.    Limitations to "Casting Work"

For a number of RFPs, the casting company defendants have sought to limit the requests to information relating to "Defendants provision of casting work," as defendants have defined it.[7] This limitation is too narrow in most such cases.  First and foremost, it excludes information about defendants' overall business and operations.  Such information goes directly to whether such entities are (i) employees of producers, (ii) akin to "loan out-companies," or (ii) more substantial independent businesses, as alleged.  Second, as noted above, your definition of

---

[7] This includes RFP Nos: 14, 18.

"casting work" is substantially narrower than "casting services" related to any "theatre production," as defined in the League's RFPs.  While we may be amenable to limit certain of these requests to exclude documents relating **solely** to casting services provided for film and TV projects, we are not willing to exclude documents relating to theatre productions as we have defined it, or documents relating to the general business operations and management of each defendant.

> ### C.   Requests for Which Casting Company Defendants Will Produce All Documents Responsive to the Request as Written, subject to Resolution of Certain Global Issues.

Above, we have identified a number of global issues that we believe defendants may be relying on to limit the scope of the collection or the production.  Subject to resolution of those issues, we understand that defendants will produce documents that are responsive to the following requests **as written**:  RFP 1, 3, 7, 8, 9, 10, 11, 23, 28, 32, 34, 35, 36, 37, 39, 40, 42, 48, 55, 57, 58, 59, 60, 61,  69, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 103, 105, and 110.  If that is not correct, please let us know on the meet and confer.

> ### D.   Request 2

RFP 2 seeks information sufficient to identify all "casting staff, owners, officers, directors, partners, members, employees, and interns…"  Defendants appear to limit Request 2 to individuals that "provide casting services."  That limitation is unacceptable because it excludes: (i) individuals that may be involved in the operations of the defendant companies, which is directly relevant to whether they are simply akin to "loan-out" companies, or whether they are actually independent businesses, and (ii) individuals that may have an ownership interest or other role in the business, which would preclude a finding that the business was a labor group.  Accordingly, we do not agree to the limitation.

> ### E.   Request 4

RFP 4 seeks information about phone numbers, emails, and social media accounts, and – as for phone numbers – the identity of the applicable telecommunications carrier.  We read your response as agreeing to produce information responsive to the request as written, except for telecommunication carrier information.  Please let us know if that is not correct.  As for the telecommunication carrier, we do not see the basis for your objection.  We need that information so that we can subpoena telephone records to show the timing, frequency, and extent of conspiratorial communications.  Please confirm that you will produce such information.

> ### F.   Request 5

RFP 5 seeks the identities of each agent retained to negotiate any contractual arrangement with any producer.  After a lengthy set of objections, your offer to meet and confer, **or** conduct a Targeted Search for "each agent Defendants retained to negotiate any contractual arrangement with any producer related to casting work."  The issues relating the "meet and confer" versus "targeted search," and the limitation to "casting work" are discussed above.  Aside from those

objections, we understand that you will produce documents responsive to the request as written. If that is not correct, please let us know.

### G.    Request 6

RFP 6 similarly seeks the identity of the casting companies' accounts, bookkeepers, or casting services.  Again, you object and offer to meet and confer or conduct a targeted search. But we remain unsure of whether you intend to provide the requested information.  If you do not, please let us know.  To the extent you seek to limit this request to information related to "casting work," we disagree.  Understanding that scope of the defendants' business, and whether they are akin to "loan-out" companies, or have operations beyond that is an important issue in this case. As such, we expect a complete response to this request as written.

### H.    Request 7

RFP 7 seeks the identities of P.R. firms.  You offer to "meet and confer" or conduct a targeted search.  Please let us know whether you will or will not identity the specified people.

### I.    Request 12

RFP 12 seeks tax returns.  You objected on the grounds of burden.  That is not a valid objection, as you have not identified any burden. You also object on grounds of relevance and proportionality, though the complaint alleges the casting companies "pay taxes as businesses or corporations." Compl. ¶ 73, *see also* ¶ 81. The request is relevant and proportional. As such, we request that you produce the requested information.

### J.    Request 13

RFP 13 seeks tax documents related to your staff.  You objected on the basis of burden and relevance.  But you have not identified any burden.  As to relevance, the tax treatment of defendants' staff is a relevant factor in determining whether they are employees of the defendants or employees of each producer.  As noted above, to the extent you seek to exclude staff who work exclusively on projects for TV and film, we are amenable to that limitation, so long as we receive the information for (i) any staff that works on any theatre production, as we have defined it, or (ii) has general involvement or responsibilities for the operations or management of the defendants' business, independent of any specific casting engagement.

### K.    Request 14

RFP 14 seeks information provided to accounts, bookkeepers, and financial advisors. Defendants objected on the grounds of burden and relevance.  Again, defendants have not identified any burden, and these documents are relevant to how defendants' run their businesses and whether they are independent companies.

### L.    Request 15

RFP 15 seeks tax related information provided by the defendants' clients.  You objected to on the grounds of burden and relevance.  But how producers and defendants treat their

contractual arrangement and the casting companies' staff for tax purposes is relevant.  Nor is the production of such information burdensome.

## M.     Request 16

RFP 16 seeks information relating to each defendant's profit and loss statements and balance sheets.  You objected on relevance grounds, and offered to meet and confer.  Such documents are relevant to many issues in the case, including (i) providing information about the companies' assets, (ii) the treatment of revenue from theatre production engagements, (iii) the nature and extent of operations outside of theatre productions, (iv) the treatment of staff for accounting purposes, (v) the extent of any capital investment or ownership, (vi) the nature of expenses incurred in providing casting services,  (vii) the labor costs incurred, including for the provision of health and retirement benefits, and (viii) the disbursements of profit.  You have identified no burden in producing such information.  As such, we ask that you produce the information as requested.

## N.     Request 17

RFP 17 seeks information concerning each casting companies' costs.  You object but offer to meet and confer.  For reasons explained in response to RFP 16, the information is relevant and proportional.   Please produce it.

## O.     Requests 18-19

Requests 18 and 19 seek database and financial database information.  You seek to limit the requests to databases "relating to the provision of casting work."  As explained, above, we also need information involved in the general operation of defendants' businesses.   Please confirm that you will provide such information.

## P.     Request 20

RFP 20 seeks customer or client database information.  You offer to meet and confer. Please provide us with information concerning which responsive databases each defendant maintains, and the fields that each database contains.

## Q.     Request 21

RFP 21 seeks information from each defendant's payroll or employee management databases.  You offer to conduct a targeted search for information sufficient to show "the roles and responsibilities, dates of hire and termination, compensation and benefits, and performance assessments for individuals that engage in casting work for Commercial Broadway Theatre."  As noted above, we need information relating to (i) services provided for theatre productions, as we have defined it, and (ii) employees involved in the general operations or management of defendants' businesses.  Aside from that, we also need to understand the *fields* contained in the

database, so that we can understand if such databases contain other information that is relevant to the case.[8]

### R.   Request 22

RFP 22 seeks information sought by requests 19-21 if not maintained in a database. Once we understand what database information exists and does not exist, we can have a further discussion concerning this request.

### S.   Request 24

RFP 24 seeks all documents concerning the allocation of revenue for various purposes. You object on the grounds that it is not "proportional," and offer to produce compensation information for certain employees, which is not what this request asks for.  Information concerning how each defendant uses the money it collects from client engagements is relevant for a number of reasons, including for the reasons the Court specifically mentioned during the January 31st status conference.  As such, we request: (i) that to the extent any responsive documents are found within the scope of a custodian search, that they be produced, (ii) search terms designed to capture such documents during a custodian search are used, and (iii) appropriate custodians are selected who might have this information.

### T.   Request 25

RFP 25 seeks contracts and agreements concerning the provision of casting services. You offer to conduct a custodian search for written agreements. We also request that you conduct a targeted search to ensure that any contract repositories (e.g., file folders on network drives, or file cabinets) that contain such agreements are searched.

### U.   Requests 26-27, 29-30

RFPs 26, 27, 29, and 30 seek information relating to defendants' potential engagements to provide casting services.  It is unclear how you are intending to limit the requests.  Your objection that these requests seek "every email between a Defendant and the producers, directors, or general managers sent in the course of work" is not what the requests say.  The requests are limited to "potential engagements," and focuses on pre-engagement communications or any contractual negotiations.  To the extent there are such documents found during the scope of any custodian search, we believe such documents should be produced.[9]

---

[8] As just one example, RFP 50 seeks information about all the theatre productions that each casting staff has worked on.  We would expect that such information might be contained in either an employee or client database.  It is not clear, however, whether – if it does exist – you intend to produce it.

[9] We note that defendants offer to conduct a custodian search for Request 27, except for Carnahan and Stewart/Whitley, who offer a Targeted Search (with the improper additional condition on Plaintiff). This same discrepancy appears in at least Requests 28, 31, 32, 33, 34, and 35. Please explain the discrepancy.

### V.      Request 31

RFP 31 seeks all documents describing the services each defendant offers or considered offering, including ancillary casting services. You seek to limit this to the casting work that the "Identified Custodians" perform or offer. That is too narrow. We need to know what casting services, including ancillary casting services, each *defendant* offers or considers offering. We understand that you plan on satisfying this request through a custodian search of identified custodians, but within the scope of the custodian search, we expect that all documents responsive to the request as written be produced.[10]

### W.      Request 33

RFP 33 seeks all documents concerning the business or role of casting directors. You offered to satisfy this request through a custodian search. We need to understand whether the custodians you identify are sufficient to capture this information, or whether additional custodians or a targeted search is required for this request.

### X.      Requests 37-38

RFPs 37 and 38 seek copies of defendants' computerized and non-computerized talent databases. After a series of objections, you offer to produce samples of such databases. We look forward to seeing these samples, and will meet and confer with you concerning their sufficiency once receive them.

### Y.      Request 41

RFP 41 seeks all documents concerning defendants' efforts, plans, and strategies to collect, maintain, and utilize information about actors. You objected because, under your reading, it "could include every email regarding a meeting with an actor." That was not our intention, nor a fair reading of the request. We are seeking documents that discuss general efforts to collect, maintain, or use information about actors. A document, for example, that says "it is important that we attend university drama productions to look for talent," would be responsive. A document that says, "I'm meeting with actor Y tomorrow for lunch," would not be. We trust that you will make the appropriate judgment calls in good faith.

### Z.      Request 43

RFP 43 seeks a listing of all tangible and intangible assets used as part of the business of providing casting services or ancillary casting services. You offered to meet and confer. At the meet and confer, please be prepared to disclose whether there are ordinary course business documents, or databases that list the assets of the firm.

---

[10] We reserve the right to seek a targeted search as well, if it turns out that custodian search is insufficient to capture the requested information.

### AA.    Request 44

RFP 44 seeks each defendant's business locations.  You seek to limit it to locations that are used for casting work.  That is too narrow.  We need information about all locations owned, leased, controlled, or used by each defendant for any purpose, as it goes directly to whether such entities are akin to loan-out companies or have broader operations.

### BB.    Requests 45-47

RFP 45 seeks board or committee communications; RFP 46 seeks periodic performance reports; and RFP 47 seeks business plans.  You seek to limit each of these requests to documents relating to casting work or the alleged conspiracy.  For reasons discussed above, that limitation is too narrow, as information relating to defendants' business operations are certainly relevant. Similarly, your limitation to documents related to "defendants' alleged anticompetitive conspiracy to eliminate competition and fix prices or the alleged boycott of any producer that did not agree to their terms" is too narrow, in light of the parties' apparent disagreement concerning the nature and scope of the conspiracy alleged.  As such, we cannot agree to any limitation in any request that is so worded.

### CC.    Request 49

RFP 49 seeks documents concerning the status of any casting staff as an employee of the defendant casting company.  You offer to conduct a custodian search.  While we agree that a custodian search is appropriate for this request, we would like to understand whether you have selected the correct custodians to capture this information, and whether additional custodians or a targeted search are also needed.

### DD.    Request 50

RFP 50 seeks documents sufficient to identify the casting staff assigned to each theatre production.  You offer to satisfy this request with a custodian search.  But it would seem that this information is more likely to be found in a database or a central file.  On the meet and confer, please be prepared to explain why you believe that a custodian search of your proposed custodians is the best source for this information.

### EE.    Requests 51-52

RFPs 51 and 52 seek documents concerning activities engaged in by the staff that benefit the defendant but are not directed to a specific theatre production.  You objected that the request is too vague to respond to.  We disagree.  To the extent there are documents found within the custodian search that refer to activities by each defendants' staff that are not directed to a specific theatre production, such information would be relevant to whether such staff is an employee of the producer or an employee of the defendant.  Because the request is limited to a custodian search, the request is not too burdensome.  As for your ambiguity objection, we trust that you will make any judgment calls in good faith to ensure that – any documents that do not relate to specific theatre production, but relate to the general operations, development of talent databases or information, management of the company, or the provision of casting services for theatre productions generally – are produced.

### FF.      Request 53

RFP 53 seeks all documents relating compensation and benefits of defendants' staff.  You seek to redefine this request by offering to provide documents that are "sufficient to show" compensation and benefits.  That is not the purpose of this request, and indeed, other requests have already asked for documents sufficient to show such information.  This request seeks discovery of the documents that **_discuss_** compensation and benefits.  As such, we believe a custodian search for all responsive documents is appropriate.

### GG.      Request 54

RFP 54 seeks communications with third-parties concerning compensations and benefits.  You seek to limit the request to communications with producers, general managers, union, union members, or the League.  In addition, we would request communications with other casting service providers and prospective employees.

### HH.      Request 56

RFP 56 seeks all documents concerning decisions to hire or fire employees, or to change the terms of employment.  You seek to redefine the request, offering only to produce information about final decisions that were made.  Instead, we seek documents discussing these decisions, which is plainly relevant to the degree of control and discretion each casting company defendant has over its own staff.

### II.      Request 62

RFP 62 seeks "all documents concerning market shares for casting service providers, including share numbers, or percentage of theatrical productions served by casting service providers."  You seek to limit this request to shares for "the same definition [of the market] that Plaintiff gave to 'theatre production.'"  The request is not so limited.  The request includes any share or percentage figures relating to casting service providers.  Indeed, the request was worded that way to avoid a debate about market definition.  If documents responsive to the requests as written are found within the scope of your custodian search, we expect that such documents will be produced.

### JJ.      Requests 63-65

RFPs 63 through 65 seek documents concerning the casting services market.  Your response limits the request to the market defined in paragraph 124 of the Complaint.  Given the issues you have raised with our market definition, we are concerned you intend to inappropriately limit the scope of documents produced in response to this request.  Accordingly, we believe that the appropriate definition is the market for casting services for any theatre production, as defined in the RFPs.

### KK.      Requests 66-68, 72

RFPs 66, 67, 68, and 72 seek all documents relating to any agreement, proposed agreements, or communications between any casting company defendant and any other

defendant.   You propose to limit these requests to (i) the "provision of casting work," and (ii) the "alleged anticompetitive conspiracy or boycott."   You have not identified any burden, however, of producing all agreements among the co-conspirators.   And, given the definitional issues in your proposed modification, we cannot agree to the limitation.   Accordingly, we request that all documents found within any custodian search concerning any agreement or communication among two or more defendants be produced.

### LL.   Request 70

RFP 70 seeks documents sufficient to identify the date, time, location, and purpose of any meeting or communication among defendants.   As with RFPs 66-68, you seek to limit the request to casting work or the alleged conspiracy or boycott.   We disagree for the same reasons.

### MM.   Request 71

RFP 71 seeks all communications concerning any effort to unionize casting service providers.   You seek to limit this request to documents concerning the market alleged in paragraph 124 of the Complaint.   We are unsure how, or if you intend to rely on this limitation to exclude documents.   But we would expect that you will produce all communications concerning any effort to unionize any casting service provider that providers services for theatre productions, as defined in our RFPs.   If you intend to withhold any such document, please let us know.

### NN.   Request 73

RFP 73 seeks the calendars, appointment books, trip or travel logs, expense vouchers or reports, telephone logs, and contact lists for the Key Custodians.   You propose conducting a custodian search for the portions of such documents that relate to casting work, or the alleged anticompetitive conspiracy or boycott.   As to everything other than telephone logs, we would be amenable to this limitation, subject to ensuring that your production includes the portion of such documents that relate to any meeting or communication with any other defendant.   With respect to telephone logs, we would only be amenable to this limitation if defendants undertake the obligation of matching all telephone numbers for each defendant to ensure that all entries relating to any communication with any defendant is indeed produced.

### OO.   Request 102

RFP 102 seeks all documents that you may seek to introduce at trial.   You asserted various objections, and conclude by stating that you will produce documents "pursuant to the timelines provided by the Court or the Federal Rules of Civil Procedure."   Rule 26(a), however, requires a party to provide a "copy … of all documents … that the disclosing party … may use to support its claims or defenses, unless the use would be solely for impeachment."   Accordingly, we expect that your production in response to this RFP will include all documents you may seek to introduce at trial, and that such production will be made in the same time frames as the remainder of your production, and supplemented, if necessary, under Rule 26(e).

### PP.    Request 104

RFP 104 seeks documents provided to, considered by, or relied upon by, any expert in this matter, as soon as any such material is made available to the expert.  You object and suggest that you will produce such materials "pursuant to the timelines provided by the Court or the Federal Rules of Civil Procedure."  This is not a valid objection.  If you provide ***non-previously-produced*** documents to your expert for purposes of preparing his or her opinions, there is no reason why such documents should be provided to us at the same time.

### QQ.    Request 106

RFP 106 seeks declarations, affidavits, and non-privileged witness statements, and requests that they be produced within 24 hours of obtaining such materials.  You interpose various objections, and state that you will produce such documents "as required by the Federal Rules of Civil Procedure."  Given this qualifier, we do not understand whether you are agreeing to produce documents as requested, or not.  Please let us know your actual position.

### RR.    Request 107

RFP 107 requests all documents produced by any non-party, whether voluntarily or pursuant to a subpoena, or otherwise, and requests that they be produced within 24 hours of obtaining such materials.  You state that you will produce material "obtained pursuant to a Rule 45 subpoena or as otherwise required pursuant to the Federal Rules of Civil Procedure."  We do not believe there is any valid basis for excluding documents produced voluntarily to you for use in this case; accordingly we request that they be produced.  To the extent you are claiming privilege over these documents, we would expect that you submit a privilege log informing us that you have possession of such documents, so we can challenge your privilege claim.  With respect to timing, your response to this and the prior request is silent other than interposing a vague reference to Rule 26(e), so we assume that you agree to the 24 hours.  If that is not the case, please let us know.

### 3.    Issues Concerning the Teamsters' Objections

### A.    Teamster Custodians

You propose limiting the custodian search to two Teamster custodians:  Thomas O'Donnell and Terry Casaletta.  You have not provided us with any information to show that these are the only individuals that are likely to have responsive information or that were involved in the events described in the complaint.  It also appears that other Teamsters employees may have been involved in the events described in the complaint.  In that regard, we noted that your website lists both Terry Casaletta and David Salvador as business representatives for the Teamsters' casting efforts.  Other employees – such as Francis Connelly and Allison Hammond (who may have information concerning the contemplated contributions to the Teamsters Fund), Margaret Vaeth (who may have access to information contained in TITAN), James Fanning Jr. (who may have information concerning the overall efforts to orchestrate the conspiracy), and Brian Solomone (who appears to have a similar role as Ms. Casaletta or Mr. Salvador) – would appear to have relevant information.  On the meet and confer, we would like to understand more

about the roles and responsibilities of each of these individuals, as well as any others that may have knowledge of the events alleged.

### B.   Teamster Affiliates

You objected to the definition of "you," "your," or "Teamsters" to the extent it includes Local 817's affiliates, such as the JC 16 and the IBT.  *See* G.O. 15-16.  You also objected to producing any documents from "persons or entities other than the defendant."  G.O. 6.  We understand that you are relying on these objections to limit the custodians you will search, and that you do not intend to collect documents from the files of your affiliates.  For reasons discussed in our prior correspondence, we disagree that such documents are not in the possession, custody, or control of Local 817.  However, because the JC 16 and IBT are producing documents pursuant to the subpoenas the League as has served, we will table this discussion for now.  We reserve the right, however, to seek party discovery of such documents from Local 817.  It also appears that you may be asserting a relevance or burden objection to producing documents relating the JC 16 or the IBT that are found within any custodian search you do conduct. If that is your intent, please let us know, as we do not see any basis for excluding from the production otherwise responsive documents just because they refer to the JC 16 or IBT.[11]

### C.   Casting Services for Theatre Productions v. Casting Work for Commercial Broadway Theatre

Many of defendants' objections seek to limit your production to documents concerning "casting work for Commercial Broadway theatre."  This appears to include the following RFPs 5, 7-26, 28, 30-33, 35-40, 45, 49, 52-55, 57-61.   For reasons discussed above, we believe your definition is too narrow to the extent it is narrower than casting services relating to theatre productions, as defined in our RFPs.[12] You have also not explained why it would be unduly burdensome to produce documents that are responsive to these requests using the definitions provided in the RFPs.

### D.   Requests for Which Teamsters Will Produce All Documents Responsive to the Request as Written, Subject to Resolution of Certain Global Issues

Above, we have identified a number of global issues that we believe defendants may be relying on to limit the scope of the collection or the production.  Subject to resolution of those

---

[11] We note that your objection to the definition of "you," "your," and "Teamsters" states that "for any request using these definitions, Defendant responds on behalf of the named Defendant: *CSA*."  We assume that is a typo.  If it is not, let us know.

[12] We note that your objections employ different, and somewhat inconsistent, formulations concerning this issue.  In some cases you simply object to the extent the request goes beyond "casting work for Commercial Broadway Theatre," and in other cases your offer of production is limited to documents that concern "casting work for Commercial Broadway Theatre."   *Compare* Teamster RFP 10 (limiting offer of production to "Commercial Broadway Theatre."); 17 ("interpreting" request as limited to casting work for "Commercial Broadway Theatre"); 35 (objecting, but not interpreting the request as limited, or restricting your offer of production to, "Commercial Broadway Theatre").  We are unsure what effect these various formulations have on what you plan to produce and what you intend to withhold from production.  Regardless of the formulation of your objections, however, we do not agree to any such limitation.

issues, we understand that the Teamsters will produce documents that are responsive to the following requests *as written*: RFP 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 19, 21, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 63, 65, 70. If that is not correct, please let us know on the meet and confer.

### E.      Request 2

RFP 2 seeks information sufficient to identify Teamsters' personnel. You seek to limit this to personnel who are "relevant to the claims and defenses at issue." That is not an appropriate limitation. We are entitled to know all individuals who may have discoverable information, not just personnel you deem "relevant," and we are entitled to discovery on discovery, so that we can determine whether your custodian selection is appropriate. You have identified no burden in providing this information.

### F.      Request 3

RFP 3 seeks documents sufficient to identify all individuals with knowledge of the events described in the complaint. You refer us to your forthcoming initial disclosures. But Rule 26(a) does not require disclosure of all individuals with knowledge of the alleged events, just individuals you may elect to use at trial to support your defenses. We, therefore, request that you comply with RFP 3 as written.

### G.      Requests 4, 15, 17, 18, 19, 20

RFPs 4, 15, 17, 18, 19, and 20 are substantially similar to the Casting Company RFPs 4, 58, 62, 63, 64, and 64, respectively. We assume that both parties intend to take similar positions with respect to each corresponding request, and therefore, refer you to the discussion above. If you plan to take a different position, please let us know.

### H.      Request 21

RFP 21 seeks documents relating to the casting company defendants or any other casting service provider. It appears you intend to respond to this request as written, subject to resolution of the global issues identified above, including production from the Teamsters' affiliates. Please confirm.

### I.      Requests 22, 23, 24, 25, 26, 27, and 28

RFPs 22, 23, 24, 25, 26, 27, and 28 seek documents relating to the communications and agreements among the defendants. These requests are substantially similar to the Casting Company RFPs 66, 67, 68, 70, 71, 72, 73, and 74. We assume that both parties intend to take similar positions with respect to each corresponding request, and therefore, refer you to the discussion above. If you plan to take a different position, please let us know.

### J.      Request 29

RFP 29 seeks documents concerning whether Local 817 is one of the 200 funds that "stand on the brink of failure," according to a Teamsters' article. You offer to conduct a targeted

search.  We would like to understand what that search will consist of (e.g., who will you ask)?
In addition, we would also like any responsive documents found during the scope of the
custodian search.

### K.      Requests 30-31

RFPs 30 and 31 seek information concerning the effects of increasing membership on the
finances of the Teamsters' Funds, generally or with respect to casting services in particular.  You
offered to meet and confer.  Please explain why you cannot produce documents responsive to
these requests as written to the extent they are found within the scope of any custodian search.

### L.      Request 32

RFP 32 seeks basic information sufficient to show the make-up of the relevant
Teamsters' Funds.  You have offered to meet and confer.  Please explain why it is unduly
burdensome to produce the information requested.

### M.      Request 33

RFP 33 seeks periodic reports concerning the relevant Teamsters' Funds.  You offered to
meet and confer.  Please explain why it would be unduly burdensome to produce the regularly-
prepared reports that are requested.

### N.      Request 37

RFP 37 seeks information concerning the segregation of funds within the Teamsters
Fund.  You offered to conduct a custodian search for such information.  We will need to
understand whether the custodians you have identified are likely the best source for such
information, and/or whether a targeted search is also required.

### O.      Requests 62, 64, 66, and 67

RFPs 62, 64, 66, and 67 are substantially similar to the Casting Company RFPs 102, 104,
106, and 107, respectively.  We assume that both parties intend to take similar positions with
respect to each corresponding request, and therefore, refer you to the discussion above.  If you
plan to take a different position, please let us know.

### 4.      Issues Concerning the CSA's Objections

### A.      CSA Custodians and Targeted Searches

You propose limiting the custodian search to one CSA custodian:  Laura Adler.  On our
February 12th meet and confer, you represented that Ms. Adler is CSA's only employee, and that
CSA does not maintain any of its own e-mail systems.  You also indicated that members, board
of directors, and other individuals holding leadership positions within the CSA use their own
non-CSA email accounts to conduct CSA-related business.  We understand that it is your
position that the CSA does not have possession, custody, or control over the emails and other
documents of its members, board of directors, or other individuals holding leadership positions

within the CSA.  As such, we understand that the only custodian you are willing to search for purposes of discovery directed to CSA is Ms. Adler.  While we reserve the right to later dispute your contention concerning the discoverability of CSA members and leadership, based on the representations above, we agree that Ms. Adler is an appropriate custodian.  It also appears that CSA used DropBox to share information and documents with other defendants relating to the conduct alleged in the Complaint.  We think CSA's DropBox should therefore be searched as well.

In addition, because CSA only has one employee, we will need to ensure appropriate targeted searches are conducted for each request, where the information may be in CSA's possession, custody, and control, but not in Ms. Adler's own files.  Accordingly, in each instance where you specify a custodian search, we would like to understand the reasons for your belief that a custodian search will be more likely to obtain the requested information than a targeted search.

### B.    CSA Definitions

You objected to the definition of "you," "your," and "CSA" on various grounds.  *See* G.O. 14-15.  As just discussed, we understand that you are relying on these objections to limit the custodians you will search, and that you do not intend to collect documents from the files of CSA members or leadership.  To the extent you are seeking to redefine the definitions of the terms "you," "your" or "CSA" to withhold responsive information within the scope of any custodian search, however, we disagree that this is appropriate.  Please let us know if that is your intent.

### C.    Casting Services for Theatre Productions v. Casting Work for Commercial Broadway Theatre

Many of defendants' objections seek to limit your production to documents concerning "casting work for Commercial Broadway theatre."  This appears to include the following RFPs 5, 8, 10, 11, 13-21, 27, 30, 33-34, 36-38, 40, 41, 46, 48, 50,-55.   For reasons discussed above, we believe your definition is too narrow to the extent it is narrower than casting services relating to theatre productions, as defined in our RFPs.[13]  You have also not explained why it would be unduly burdensome to produce documents that are responsive to these requests using the definitions provided in the RFPs.

---

[13] We note that in your objections employ different, and somewhat inconsistent, formulations concerning this issue. In some cases you simply object to the extent the request goes beyond "casting work for Commercial Broadway Theatre," and in other cases your offer of production is limited to documents that concern "casting work for Commercial Broadway Theatre."  *Compare* Teamster RFP 10 (limiting offer of production to "Commercial Broadway Theatre."); 17 ("interpreting" request as limited to casting work for "Commercial Broadway Theatre"); 35 (objecting, but not interpreting the request as limited, or restricting your offer of production to, "Commercial Broadway Theatre").  We are unsure what effect these various formulations have on what you plan to produce and what you intend to withhold from production.  Regardless of the formulation of your objections, however, we do not agree to any such limitation.

**D.      Requests for Which CSA Will Produce All Documents Responsive to the Request as Written, Subject to Resolution of Certain Global Issues**

Above, we have identified a number of global issues that we believe defendants may be relying on to limit the scope of the collection or the production.  Subject to resolution of those issues, we understand that the CSA will produce documents that are responsive to the following requests *as written*:  RFP 1, 2, 4, 5, 6, 8, 9, 11, 13, 14, 15, 16, 17, 22, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52 ,53, 54, 55, 57, 59, and 64.  If that is not correct, please let us know on the meet and confer.

**E.      Request 2**

RFP 2 seeks information sufficient to identify CSA's current and former staff, officers, directors, employees, and interns.  You seek to limit this to personnel who are "relevant to the claims and defenses at issue."  That is not an appropriate limitation.  We are entitled to know all individuals who may have discoverable information, not just personnel you deem "relevant," and we are entitled to discovery on discovery so that we can determine whether your custodian selection is appropriate.  You have identified no burden in providing this information.

**F.      Request 3**

RFP 3 seeks documents sufficient to identify each committee of the CSA and the New York Chapter of the CSA.  You seek to limit this request to individuals "whose activities concern or concerned Defendant's alleged anticompetitive conspiracy or boycott."  That limitation is not acceptable.   We need to understand the makeup of the CSA leadership, especially since you have represented that it only has one actual employee, and does all of its business through such leadership committees.

**G.      Request 7**

RFP 7 is substantially similar to the Teamsters' RFP 3.  We assume that you intend to take similar positions with respect to these requests, and therefore, refer you to the discussion above.  If you plan to take a different position, please let us know.

**H.      Request 10**

RFP 10 seeks board or committee materials relating to casting services for Broadway theatre.  You seek to limit this request to documents related to "the alleged anticompetitive conspiracy or boycott."  That is too narrow.  Documents that concern competition in the market, market dynamics, meetings among casting service providers (which themselves are competitors), the nature of casting services, for instance, are all relevant.  Thus, we believe the CSA should produce documents responsive to the request as written. We also note that you have offered to conduct a custodian search in response to this Request. While we agree a custodian search is appropriate, please be prepared to discuss whether a Targeted Search is also needed.

### I.      Request 12

RFP 12 seeks all documents concerning any casting company defendant or employees or owners of any casting company defendant.  Again, you seek to limit this to documents related to the "alleged anticompetitive conspiracy or boycott."  This is too narrow.  Documents concerning the relationship between defendants are important in a conspiracy case, particularly where – as here – it is alleged that communications occurred under the auspices of the CSA. Since you are only searching a single custodian, there is no burden in producing documents responsive to the requests as written.

### J.      Requests 18-21

RFPs 18-21 are substantially similar to the Casting Company RFPs 62-65.  We assume that you intend to take similar positions with respect to each request, and therefore, refer you to the discussion above.  If you plan to take a different position, please let us know.

### K.      Requests 23-24

RFPs 23 and 24 seek documents concerning meetings or communication by or among the CSA, the casting company defendants, and the Teamsters.  Again, in a horizontal conspiracy case, production of such communications is necessary and common.  You have not identified any category of communications for which production would be unduly burdensome, especially since you are only planning on searching a single custodian.  As such, we believe you should produce all documents responsive to the requests as written.

### L.      Request 27

RFP 27 is substantially similar to the Casting Company RFP 71.  We assume that you intend to take similar positions with respect to each request, and therefore, refer you to the discussion above.  If you plan to take a different position, please let us know.

### A.      Requests 56, 58, 60, and 61

RFPs 56, 58, 60, and 61 are substantially similar to the Casting Company RFPs 102, 104, 106, and 107, respectively.  We assume that both parties intend to take similar positions with respect to each corresponding request, and therefore, refer you to the discussion above.  If you plan to take a different position, please let us know.

*            *            *

Please let us know when you are available to meet and confer.[14]

---

[14] We note that, while we have endeavored to highlight our primary concerns with your objections since you served them last Friday, this letter is not designed to be exhaustive, nor are our summaries of our requests intended to limit or amend our requests in any way.  We reserve the right to raise additional issues concerning your responses and objections, and to ask the Court make a determination as to the validity or effect of any objection or proposed modification of the request.

Sincerely,

/s/ *Colin Kass*